Toomey, J.
The plaintiff, Tony B. Bahnan (Bahnan), brought suit against the original defendants, PHNB Really, Inc. (PHNB) and others, for the return of a $4,400 deposit made in connection with Bahnan’s failed attempt to purchase the property known as 373-379 Pleasant Street, Worcester, Massachusetts (the Property). Since the original filing of the action in 1992, Bahnan arranged for a Deputy Sheriff to levy upon, seize, and subsequently sell the Property (to Bahnan) based upon an execution issued against PHNB. Intervening defendants, Thomas J. Mahan and Paul J. Mahan, Trustees of the Mahan Family Realty *585 Trust (the Mahans), seek summary judgment upon the ground that neither the Federal Deposit Insurance Corporation (FDIC) nor the Mahans received prior notice of the sheriffs sale of the Property. For the following reasons, the Mahans’ second motion for partial summary judgment is ALLOWED.
BACKGROUND
This lawsuit was originally commenced by Bahnan against PHNB, John Doe and ERA John Nelson Really, Inc., Trustee (ERA). The relief requested in the complaint was for specific performance or, in the alternative, the return of the $4,400 deposit which was being held by ERA in connection with Bahnan’s attempt to purchase the Property. ERA was the real estate broker for Bahnan’s unconsummated offer for the Properly. On August 25, 1992, Bahnan’s complaint in this action was recorded with the Worcester Registry of Deeds within the title of the Property in Book 14470, page 272.
On October 2, 1992, Bahnan requested a default against defendant PHNB. At the time of the motion for default, PHNB owned the Property. On October 6, 1992, default judgment was entered against PHNB in the sum of $4,400, with interest from August 25, 1992 to October 2, 1992, in the sum of $54.29. On May 13, 1993, Bahnan obtained a levy of execution from the court for $4,977.50. On May 21, 1993, the execution was recorded in Book 15200, page 29.
On March 24, 1993, prior to Bahnan’s levy and recording, PHNB had executed a valid deed transferring the Property to FDIC and, on that same day, FDIC executed a deed conveying the Property to the Mahans. On May 28, 1993, the deeds were recorded at the Worcester Registry of Deeds, as was the trust instrument creating the Mahan Family Realty Trust — Pleasant Street.
On June 2, 1993, Bahnan followed the notice requirements of G.L.c. 236, §28 by providing actual notice to the debtor, PHNB, and by properly publishing and posting notice of the impending sale. No actual notice of the sheriffs sale was provided by Bahnan to either FDIC or the Mahans whose deed had been recorded on May 28, 1993. On July 20, 1993, the sheriffs sale was held; Bahnan purchased the property for the amount of his judgment against PHNB plus $1,345.57, representing the sheriffs fees for the sale. The deed was delivered to Bahnan on July 30, 1993, and by him recorded on September 30, 1993.
The Mahans seek partial summary judgment due to Bahnan’s failure to provide them with sufficient notice prior to the sheriffs sale of the Property. Bahnan responds by citing the Mahans’ record notice of the complaint and the execution and by challenging the validity of the Mahans’ ownership of the Property.
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, the moving party may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp. 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The Mahans seek to invalidate the sheriffs sale of the Properly because they received insufficient notice from Bahnan prior to the sale of the land. The Mahans urge this court to follow the reasoning that prevailed in Teschke v. Keller, 38 Mass.App.Ct. 627 (1995). In Teschke, the Appeals Court held that the G.L.c. 236, §28 notice of a sheriffs sale violated the due process rights afforded to the holder of a junior mortgage by the Fourteenth Amendment of the Constitution of the United States. After determining that the junior mortgagee, whose identity was readily ascertainable from public records, was neither given nor had actual knowledge of the sale, the Massachusetts Appeals Court determined that such a lack of notice would cause the junior mortgage to remain in force after the sale.
Bahnan, in opposing the defendants’ motion, contends that Teschke is inapplicable because the facts in the instant case do not involve a mortgage interest or a misidenhfied party on the recorded attachment. This court rejects Bahnan’s distinguishing of Teschke and conclude that, despite some factual distinctions between the instant case and Teschize, the Teschke ruling ought guide the court’s resolution of the present dispute.
In Teschke, the Appeals Court relied upon language from the United States Supreme Court asserting that “(n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely áffect liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.” Teschke, 38 Mass.App.Ct. at 633, citing Mennonite Bd. of Missions *586 v. Adams, 462 U.S. 791, 800 (1983) (involving a tax sale under Indiana law) (emphasis in original). As such, “any party” with liberty or property interests— not just mortgagees — have a right to a certain level of notice prior to a sheriffs sale. There is nothing in the Teschke opinion that discourages or prevents the application of the Teschke ruling to non-mortgagees possessed of a significant property interest.
In the case at bar, both parties concede that the levy of execution and the sheriffs sale is sufficient to constitute the state action required to implicate due process. See Teschke, 38 Mass.App.Ct. at 633-34. The procedural protection of due process applies, however, only if there is a palpable liberty or property interest at stake. O’Malley v. Sheriff of Worcester County, 415 Mass. 132, 135 (1993). In order to have a protected property interest, a person “must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.” Take Five Vending, Ltd. v. Provincetown, 415 Mass. 741, 747 (1993), quoting Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).
The Mahans have, as a matter of law, a protected property interest. Concedely, the deed between the Mahans and the FDIC was dated March 24, 1993 and was not recorded until May 28, 1993, over two weeks after Bahnan filed his execution with the Register of Deeds. The recording statute aims to protect subsequent purchasers or attaching creditors without notice such as Bahnan. Aronian v. Asadoorian, 315 Mass. 274, 276 (1944). Nevertheless, the recording statute does not affect the validity of an unrecorded deed.[2] Id. Albeit the holder of “an unrecorded deed [the Mahans] may not prevail against those protected by the recording statute [Bahnan], he [ttie Mahans] still possesses a valuable property interest. ” Opinion of the Justices to the House of Representatives, 365 Mass. 681, 692 (1974).
Although Bahnan did not have the requisite record notice of the transfer of the Property to the Mahans at the time he recorded the levy of execution in his favor, the existence of the levy within the Property’s chain of title did not prevent PHNB from selling the Property. Whipple v. Thayer, 33 Mass. 25, 27-28 (1834). Because, however, the transfer was recorded following the recordation of the levy of execution, the Property remains subject to the levy. Id. at 28. At the time of the levy of execution, Bahnan, as judgment creditor, had “a mere lien upon the property which only has the potential of ripening into title following judicial sale. As a result, the levy of execution only gives . . . [Bahnan] no greater interest than that already possessed.” 30 Am. Jur. 2d, Executions §225 (1994 & Supp. 1995) (citations omitted). Furthermore, the levy on the PHNB’s real property does not vest any special interest in the sheriff other than his right to enter the land for the purposes of the sale. Id. at §223.
Based on the undisputed facts contained in the materials before this court, PHNB effectively conveyed its interest in the Property to the FDIC. Subsequently, FDIC effectively transferred the Property to the Ma-hans. But, because Bahnan was deprived of record notice of PHNB’s sale of the properly prior to his levy on May 13, 1993, the Property remains subject to his levy of execution. Such is the consequence of the transferring parties’ failure timely to record the deeds. See Aronian, 315 Mass. at 276.
The fact that the Property’s chain of title, at the time of the recording of the levy of execution, omitted to include the deeds conveying the land to the FDIC or to the Mahans did not, however, relieve Bahnan of his duly to ensure that due process was observed in connection with the sale. As indicated in Teschlce, “knowledge [on the Mahans’ part] of an attachment constructively provided by recording at a registry is not equivalent to notice that a scheduled sheriffs sale is pending since a sale may be conducted for up to six years after the recording of the execution and, in some circumstances, well beyond that time.” Teschke, 38 Mass.App.Ct. at 635, citing, inter alia, G.L.c. 236, §49A and c. 223, §114A. “In terms of allocation of burden, it is far more reasonable to impose a duty on the party conducting the sale to notify easily ascertainable [owners of the property subject to the levy] at their recorded addresses than to require [such an owner] to check local newspapers and posting places at least eveiy twenty-one and thirty days respectively.” Id. Once Bahnan decided to schedule the sheriffs sale, the demands of due process required that he, or the officer who was to carry out the sale, consult the registry of deeds to determine the parties (the Mahans) who should be notified.
General Laws c. 236, §28, mandates that the sheriff making the sale of the Properly give notice by delivery to the debtor, in this case PHNB, and by posting in a public place in the town where the land to be auctioned is located and in two adjoining towns. The statute also requires the publication of notice once in each of three successive weeks in a newspaper published in the town where the properly is located. Id. That statutory process was inadequate, under the Fourteenth Amendment, to provide the Mahans with the notice to which they were entitled due to their significant properly interest as the holder of title to the Properly. The Mahans’ situation, as the owners and not merely the junior mortgagees of real property subject to a sheriffs sale, offers an even more compelling set of circumstances than those found in Teschlce. The Mahans obtained actual title — not a mere mortgage interest — to the Property prior to the scheduling of the sheriffs sale and that acquisition of ownership entitled them to the full measure of protections afforded by the Constitution. Bahnan’s omission to provide actual notice to the Mahans, whose title recording had predated the sale, was an abridgement of those protections.
Therefore, the sheriffs sale must be set aside. The Mahans’ hold title subject to the levy of execution. Bahnan may again schedule a sheriffs sale, but must be mindful of the need to notify the Mahans, PHNB, *587 and any other party with any significant liberty or property interest in the real estate. The Mahans will be able to exercise any and all redemption rights provided by statute from the time of a constitutionally valid sheriffs sale.
ORDER
For the foregoing reasons, the Second Motion for Partial Summary Judgment of Defendants Thomas J. Mahan and Paul J. Mahan, Trustees of the Mahan Family Trust is ALLOWED.

In the Bahnan’s opposition to Defendants Thomas J. Mahan and Paul J. Mahan, Trustees of the Mahan Family Realty Trust’s [First] Motion for Summary Judgment, Bahnan challenged the validity of the deed between FDIC and the Mahans. According to Bahnan, the “Mahan Family Realty Trust — Pleasant Street,” the trust set up in connection with the transaction, is separate and distinct from the “Mahan Family Really Trust” that is listed as the grantee on the challenged deed. Therefore, Bahnan’s reasoning continues, the deed is ineffective due to the failure properly to name the grantee.
The “misnomer of the grantee will not invalidate the deed where some person can be shown to be the person who was intended. This the grantee may do by showing that he directed the use of the name as appearing in the deed or that he accepted the deed as delivered.” 23 Am. Jur. 2d, Deeds §35 (1983 & Supp. 1995) (citations omitted). Extrinsic evidence is admissible to identify the person intended to be designated by the name used for the grantee in the deed provided such extrinsic evidence is merely explanatory and will not in effect add new terms to the conveyance document. See Peabody v. Brown, 76 Mass. 45 (1857) (where the intended grantee is latently ambiguous, parol proof may be offered to explain words of a doubtful sense). Likewise, extrinsic evidence is admissible to show who was intended as the grantee where two or more parties have the same or similar names. Simpson v. Dixon, 131 Mass. 179, 184 (1881).
There being evidence in the record that the parties to the deed did in fact intend for the Mahan Family Realty Trust— Pleasant Street to take possession of the land and no evidence to the contrary, the position advanced by Bahnan must fail. See 23 Am.Jur., Deeds §274 (the “primary rule of construction" to determine the grantee in a deed is to determine the intention of the parties if the grantee’s identity is not otherwise made certain by the instrument).